US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NOV - 2 2021

By          JAMIE GIANI, Clerk
Deputy Clerk

UNITED STATES OF AMERICA      )
                              )
v.                            )          Criminal No. _2:21CR 20030-001_
                              )
BILLY JOE TAYLOR              )

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B covered medically necessary physician office services and outpatient care,

1

including laboratory tests.

4.      Physicians, clinics, laboratories, and other health care providers (collectively, "providers") that provided items and services to Medicare beneficiaries were able to apply for and obtain a "provider number." Providers that received a Medicare provider number were able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

5.      When seeking reimbursement from Medicare for provided benefits, services, or items, providers submitted the cost of the benefit, service, or item provided together with a description and the appropriate "procedure code," as set forth in the Current Procedural Terminology ("CPT") Manual or the Healthcare Common Procedure Coding System ("HCPCS"). Additionally, claims submitted to Medicare seeking reimbursement were required to include: (i) the beneficiary's name and Health Insurance Claim Number ("HICN"); (ii) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (iii) the name of the provider, as well as the provider's unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). Claims seeking reimbursement from Medicare were able to be submitted in hard copy or electronically.

**Part B Coverage and Regulations**

6.      CMS acted through fiscal agents called Medicare administrative contractors ("MACs"), which were statutory agents for CMS for Medicare Part B. The MACs were private entities that reviewed claims and made payments to providers for services rendered to beneficiaries. The MACs were responsible for processing Medicare claims arising within their assigned geographical area, including determining whether the claim was for a covered service.

7.      Novitas Solutions, Inc. was the MAC that covered, among other locations, Arkansas and Oklahoma. Palmetto GBA, LLC was the MAC that covered, among other locations,

2

North Carolina. Noridian Healthcare Solutions, LLC was the MAC for, among other locations, California.

8.     To receive Medicare reimbursement, providers had to make appropriate application to the MAC and execute a written provider agreement. The Medicare provider enrollment application, CMS Form 855B, was required to be signed by an authorized representative of the provider. CMS Form 855B contained a certification that stated:

> I agree to abide by the Medicare laws, regulations, and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

9.     CMS Form 855B contained additional certifications that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [] will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

10.     Payments under Medicare Part B were often made directly to the health care provider rather than to the patient or beneficiary. For this to occur, the beneficiary would assign the right of payment to the health care provider. Once such an assignment took place, the health care provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

11.     Medicare paid for claims only if the items or services were medically reasonable, medically necessary for the treatment or diagnosis of the patient's illness or injury, documented, and actually provided as represented.

3

**Laboratory Testing**

12.     Medicare only covered diagnostic testing, including urine drug testing and respiratory testing, that was "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Title 42, United States Code, Section 1395y(a)(1)(A).

13.     If diagnostic testing was necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member, Medicare imposed additional regulations before covering the testing. Title 42, Code of Federal Regulations, Section 410.32(a) provided that "all diagnostic x-rays tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, a physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." During the COVID-19 pandemic, CMS instituted a waiver of the requirement that a practitioner order certain respiratory tests, including respiratory pathogen panel CPT code 87631. However, the other regulations, including that the examinations must be provided as represented, still applied.

**Individuals and Related Entities**

14.     Vitas Laboratory LLC ("Vitas"), a Delaware limited liability company, was a laboratory that purportedly provided urine drug testing and other laboratory testing to Medicare beneficiaries.

15.     Corrlabs, LLC ("Corrlabs") was a laboratory that purportedly provided urine drug testing and other laboratory testing to beneficiaries. Corrlabs was originally formed as Solas Health Technologies, PLLC in North Carolina and was converted to a limited liability company

4

and renamed Corrlabs, LLC.

16.     Nations Laboratory Services, LLC ("Nations"), a Delaware limited liability company, was a laboratory that purportedly provided urine drug testing and other laboratory testing to Medicare beneficiaries.

17.     Beach Tox, LLC ("Beach Tox"), a California limited liability company, was a laboratory that purportedly provided urine drug testing and other laboratory testing to Medicare beneficiaries.

18.     Imaginus Diagnostic Laboratory, LLC ("Imaginus"), a limited liability company formed in Oklahoma, was a laboratory that purportedly provided urine drug testing and other laboratory testing to Medicare beneficiaries.

19.     **BILLY JOE TAYLOR** was a resident of Lavaca, Arkansas, in Sebastian County, in the Western District of Arkansas, and controlled and directed Vitas, Beach Tox, Nations, Corrlabs, and Imaginus from the Western District of Arkansas, and elsewhere.

<u>**SCHEME TO DEFRAUD**</u>

20.     From in or around February 2017, and continuing through in or around May 2021, in the Western District of Arkansas, Fort Smith Division, and elsewhere, the defendant, **BILLY JOE TAYLOR**, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain and attempt to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and

under the custody and control of Medicare, in violation of Title 18, United States Code, Sections 1347 and 2 (hereinafter "scheme to defraud").

**PURPOSE OF SCHEME TO DEFRAUD**

21.     It was a purpose of the scheme and artifice to defraud for the defendant, **BILLY JOE TAYLOR**, to unlawfully enrich himself and others by submitting and causing the submission of false and fraudulent claims to Medicare for laboratory tests, including urine drug tests and tests for respiratory illnesses during the Covid-19 pandemic, that were medically unnecessary, not ordered by medical providers or provided as represented, and ineligible for reimbursement.

**MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

The manner and means by which the defendant, **BILLY JOE TAYLOR**, and others known and unknown to the grand jury sought to accomplish the objects and purpose of the scheme and artifice to defraud included, among other things:

22.     **BILLY JOE TAYLOR** controlled and directed Vitas, Beach Tox, Nations, Corrlabs, and Imaginus.

23.     **BILLY JOE TAYLOR** submitted and caused the submission of false and fraudulent enrollment documents to Medicare for Vitas, in which he falsely attested that he would "not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [] will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

24.     **BILLY JOE TAYLOR** concealed and disguised his ownership and control by making false statements and failing to disclose material information to Medicare regarding his ownership and control of Vitas, Beach Tox, Nations, Corrlabs, and Imaginus.

6

25. **BILLY JOE TAYLOR** obtained medical information and private personal identifying information for Medicare beneficiaries by various means, including by purchasing existing laboratories and misappropriating confidential Medicare beneficiary and provider information that previously had been used to submit claims to Medicare.

26. **BILLY JOE TAYLOR** misused this confidential Medicare beneficiary and provider information to repeatedly submit and cause the submission of false and fraudulent claims to Medicare for lab tests that were not ordered by the medical providers and not performed for the Medicare beneficiaries as represented in the claims.

27. **BILLY JOE TAYLOR** submitted or caused the submission by Vitas, Beach Tox, Nations, Corrlabs, and Imaginus of false and fraudulent claims to Medicare in excess of the approximate amount of $100 million for lab tests that were medically unnecessary, not ordered by medical providers or provided as represented, and ineligible for reimbursement.

28. **BILLY JOE TAYLOR** used the fraud proceeds he received from Vitas, Beach Tox, Nations, Corrlabs, and Imaginus to live a lavish lifestyle, including purchasing luxury items such as automobiles, jewelry, guitars, and other items using the proceeds of the fraud.

## COUNTS 1-16
## Health Care Fraud
## (18 U.S.C. § 1347 and 18 U.S.C. § 2)

29. The factual allegations in paragraphs 1 through 28 are incorporated herein by reference.

30. On or about the dates set forth as to each count below, in the Western District of Arkansas, Fort Smith Division, and elsewhere, the defendant, **BILLY JOE TAYLOR**, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice to defraud as describe

above, submitted and caused the submission of the following false and fraudulent claims to Medicare for laboratory services neither ordered by the named medical provider nor performed for the named beneficiary, each submission constituting a separate count:

| Count | Medicare Beneficiary | Approx. Date of Submission of Claim | Submitting Laboratory | Claim No. | Procedure Code(s); Total Approx. Amount Billed |
|---|---|---|---|---|---|
| 1 | T.W. | 7/22/19 | Vitas | 520219203070840 | G0483, 80307 (Definitive and presumptive drug test) $619 |
| 2 | T.W. | 12/5/19 | Nations | 911119339254340 | G0483, 80307 (Definitive and presumptive drug test) $619 |
| 3 | T.W. | 4/30/20 | Corrlabs | 310220121266470 | G0483 (Definitive drug test) $499 |
| 4 | W.P. | 6/23/20 | Beach Tox | 551120175720200 | 87798, 87631, 87640, 87651, 87541, 87150 (Pathogen testing) $2779 |
| 5 | W.P. | 5/14/21 | Imaginus | 911121134312870 | 87631, 87640, 87651, 87541, 87633 (Pathogen testing) $2007 |
| 6 | A.M. | 8/29/19 | Vitas | 520219241186280 | G0483, 80307 (Definitive and presumptive drug test) $619 |
| 7 | A.M. | 7/27/20 | Beach Tox | 551820209126530 | G0483 (Definitive drug test) $493 |
| 8 | A.M. | 11/19/20 | Nations | 911120324076370 | G0483 (Definitive drug test) $499 |
| 9 | K.S. | 1/29/21 | Beach Tox | 551821028478240 | G0483 (Definitive drug test) $493 |

| Count | Medicare Beneficiary | Approx. Date of Submission of Claim | Submitting Laboratory | Claim No. | Procedure Code(s); Total Approx. Amount Billed |
|-------|----------------------|-----------------------------------|----------------------|-----------|-----------------------------------------------|
| 10 | G.B. | 9/14/20 | Corrlabs | 310220258703150 | 87541, 87631, 87633, 87640, 87651 (Pathogen testing) $2007 |
| 11 | G.B. | 6/8/20 | Beach Tox | 551120160699470 | 87798, 87631, 87640, 87651, 87541, 87150 (Pathogen testing) $2779 |
| 12 | G.B. | 12/14/20 | Nations | 911120349121350 | 87631, 87640, 87651, 87541, 87633 (Pathogen testing) $2007 |
| 13 | A.P. | 10/12/2020 | Beach Tox | 551820286214000 | 87798, 87631, 87640, 87651, 87541, and 87150 (Pathogen testing) $2779 |
| 14 | A.P. | 3/8/2021 | Nations | 911121067189260 | 87631, 87640, 87651, 87541, 87633 (Pathogen testing) $2007 |
| 15 | A.P. | 5/13/2021 | Imaginus | 911121133055120 | 87631, 87640, 87651, 87541, 87633 (Pathogen testing) $2007 |
| 16 | J.B. | 4/12/21 | Imaginus | 911121102415530 | G0483 (Definitive drug test) $499 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 17
### Money Laundering
### (18 U.S.C. § 1957)

31.     On or about February 11, 2021, in the Western District of Arkansas, Fort Smith

Division, the defendant, **BILLY JOE TAYLOR**, did knowingly engage and attempt to engage in a monetary transaction within the United States and affecting interstate commerce in criminally derived property of a value greater than $10,000, which property had been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, namely, the defendant, **BILLY JOE TAYLOR**, used a debit card on his account at the First Horizon Bank with account number ending 3194 to make a purchase at Newton's Jewelers in Fort Smith, Arkansas, in the amount of $20,742.75 using funds derived from health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1957.

## **FORFEITURE ALLEGATION**

32.  The allegations contained in Counts One Through Seventeen of this Indictment and all supporting paragraphs are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **BILLY JOE TAYLOR**, has an interest pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7).

33.  Upon conviction of a violation of Title 18, United States Code, Section 1347, as alleged in this Indictment, the defendant, **BILLY JOE TAYLOR**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

34.  Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in this Indictment, the defendant, **BILLY JOE TAYLOR**, shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such

10

property, pursuant to Title 18, United States Code, Section 982(a)(1).

35.     The property subject to forfeiture as a result of the alleged offenses includes, but is

not limited to, the following:

## REAL PROPERTY

A. The property located at 201 Highway 255, Lavaca, Arkansas, with a legal description of:

> Part of Government Lot 2 of the Northeast Quarter (NE/4) of Section 1, Township 7 North, Range 31 West, Sebastian County, Arkansas being more particularly described as follows:   Commending at an existing P/K nail in Biggs Street marking the Southwest Corner of Government Lot 1 of said NE/4; thence N 00°01'40"W, 1367.41 feet along the West line of said NE/4 to a point in the centerline of Arkansas Highway 255; thence along said center line the following Eighteen (18) courses: N 03°02'57"W, 42.50 feet; N 03°23'27" E, 67.70 feet; N 06°33'59 E, 56.99 feet; N 11°50'32" E, 43.53 feet; N 17°24'38"E, 39.13 feet to an existing P/K nail; N 23°18'50" E, 39.44 feet to an existing P/K nail; N 29°55'46" E, 35.92 feet to an existing P/K nail; N 37°093'35" E, 36.51 feet; N 43°40'03" E, 37.93 feet; N 47°53'15" E, 41.74 feet; N 50°45'36" E, 203.02 feet; N 49°05'20" E, 79.26 feet; N 45°43'57" E, 54.95 feet; N 41°37,58" E, 44.03 feet; N 38°08'35" E, 41.65 feet; N 33°26'17" E, 61.07 feet; N 30°32'56" E, 170.52 feet; N 34°37'27" E, 54.95 feet to an existing P/K nail being the Point of Beginning; thence continuing along said centerline the following Five (5) courses: N 34°37'27" E, 13.01 feet to an existing P/K nail; N 34°09'58" E, 9.12 feet to an existing P/K nail; N 40°32'01" E, 70.54 feet to an existing P/K nail; N 44°50'16" E, 69.42 feet; N 47°05'53" E, 48.34 feet to an existing P/K nail; thence leaving said centerline S 32°42'25" E, 301.07 feet to a set rebar; thence S 57°21'41" W, 203.60 feet to a set rebar; thence N 32°38'19" W, 248.36 feet to the point of beginning, containing 1.30 Acres more or less, being subject to public road rights of way and any easements of record. Subject to Easements, Rights of Way and Covenants of record. Subject to Restrictions of record and Reservations and Conveyances of Oil, Gas and Other Minerals.

B. The property located at 200 East Central Avenue, Central City, Arkansas, with a legal description of:

> Part of the Northwest Quarter of the Northeast Quarter of Section 1, Township 7 North, Range 31 West, Sebastian County, Arkansas being more particularly described as follows: Commencing at an existing p/k nail marking the Southwest Corner of the Southwest Quarter of the Northeast Quarter. Thence along the West line of the Northeast Quarter, North 02

degrees 40 minutes 47 seconds East, 1,367.75 feet. Thence leaving said West line, North 72 degrees 00 minutes 39 seconds East, 90.67 feet to the intersection of the North right of way of Arkansas Highway 22 and the Easterly right of way of Arkansas Highway 255. Thence along said North right of way, North 80 degrees 38 minutes 38 seconds East, 195.27 feet to a set rebar with cap and the Point of Beginning. Thence leaving said North right of way, North 00 degrees 22 minutes 11 seconds West, 418.00 feet to the centerline of Arkansas Highway 255. Thence along said centerline, North 53 degrees 25 minutes 00 seconds East, 58.57 feet to an existing p/k nail. Then leaving said centerline, South 86 degrees 36 minutes 16 seconds East, 787.20 feet to a set rebar with cap. Thence South 02 degrees 42 minutes 11 seconds West, 316.86 feet to an existing rebar on the North right of way of Arkansas Highway 22. Thence along said North right of way the following bearings and distances: South 88 degrees 38 minutes 07 seconds West, 57.13 feet to an existing concrete right of way marker. Around a curve to the left having a radius of 3,032.35 feet and subtended by a chord bearing and distance of South 84 degrees 29 minutes 52 seconds West, 351.64 feet to an existing nail. North 72 degrees 39 minutes 47 seconds West, 27.56 feet to an existing nail. South 80 degrees 38 minutes 38 seconds West, 386.91 feet to the Point of Beginning, also known as Tract 2, according to survey by Satterfield Land Surveyors, P.A. dated July 3, 2019 as Job No. 44,354. Subject to Easements, Rights of Way and Covenants of record. Subject to Restrictions of record and Reservations and Conveyances of Oil, Gas and Other Minerals.

C. The property located at 8500 South Camp Trail and adjoined vacant lot, Van Buren, Arkansas, with the legal description of:

Lot 4 and 5, Stone Bridge Estates, an Addition to the City of Cedarville, Crawford County, Arkansas, according to the Plat filed of record April 9, 2008. Subject to Easements, Rights of Conveyances of Oil, Gas and Other Minerals.

D. The property located at 2616 Carly Drive, Lavaca, Arkansas, with the legal description of:

Lot 11, River Pointe, an Addition of the City of Lavaca, Sebastian County Arkansas, according to the Corrective Plat filed of record December 17, 2009. Subject to Easements, Rights of Way and Covenants of record. Subject to Restrictions of record and Reservations and Conveyances of Oil, Gas, and Other Minerals.

E. The property located at Parcel 12275-000-00, Ocala, Marion County, Florida, with the legal description of:

The north 1/2 of the north 636.58 feet less the east 747.16 feet of the

12

following described parcel: commencing at the northeast corner of section 4, township 14 south, range 20 east, Marion County, Florida, thence S. 00 degrees 16'49" W., along the east boundary of said section 881.86 feet to the point of beginning; thence continue along said east boundary S. 00 degrees 16'49" W., 900.92 feet to the southeast corner of the north 1/2 of the southeast 1/4 of said section; thence departing from said east boundary N. 89 degrees 38'43" W., along the south boundary of the north 1/2 of the southeast 1/4 of said section 2132.75 feet; thence departing from said south boundary N. 00 degrees 13'53" E., 420.08 feet; thence N. 89 degrees 39'16" W., 420.08 feet to an intersection with the west boundary of the east 1/2 of said section; thence N. 00 degrees 12'47" E., along said west boundary 636.65 feet; thence departing from said west boundary S. 89 degrees 38'44" E., 2133.93 feet; thence S. 00 degrees 16'49' W., 155.74 feet; thence S. 89 degrees 38'44" E., 420.00 feet to the point of beginning.

F. The property located at 3050 South School Avenue, Fayetteville, Arkansas, with the legal description of:

A part or Lot 29, Block 1 of J.W. Skelton's Subdivision to the City of Fayetteville, Washington County, Arkansas, as shown on Plat Record 4 at Page 134, being a part of the Southeast Quarter of the Southwest Quarter and the Southwest Quarter of the Southeast Quarter of Section 28, Township 16 North, Range 30 West, Washington County, Arkansas, being more particularly described as follows, to-wit: Beginning at an existing rebar which is N86°44'37" W 330.75 feet and N04°15'37"E 177.66 feet from the Southeast corner of said Lot 29 and running thence N86°09'01" W 167.32 feet to an existing rebar, thence N16°08'06"E 92.75 feet to an existing rebar, thence S85°33'29"E 148.23 feet, thence S04°15'37"W 89.10 feet to the Point of Beginning, containing 0.33 acres, more or less. Subject to that portion in Highway #71B right of way on the West side of herein described tract.  Subject to easements, rights-of-way, and protective covenants of record, if any.  Subject to all prior mineral reservations and oil and gas leases.

## PERSONAL PROPERTY

G. 2019 Mercedes-Benz Sprinter Van, VIN: WD4PF4CDXKP155500 from 5520 Wheeler Avenue, Fort Smith, Arkansas, seized on May 25, 2021;

H. 2017 Tesla Model X, VIN: 5YJXCAE48HF075775 seized from 3601 Redbud Drive, Sand Springs, Oklahoma, on May 25, 2021;

I. 2019 BMW X3, VIN: 5UXTS3C5XKLR73709 seized from 8500 South Camp Trail, Van Buren, Arkansas, on May 25, 2021;

J. 2021 GMC Yukon Denali, VIN: 1GKS1DKL1MR116205 seized from 6202 West Sage, Rogers, Arkansas, on May 25, 2021;

13

K. 1972 Chevy Nova, VIN: 1X27D2W232158, seized from 3108 Ramsgate Way, Fort Smith, Arkansas, on May 25, 2021;

L. Camp Mower, seized from 8500 South Camp Trail, Van Buren, Arkansas, on May 25, 2021;

M. The following personal property, all seized from 12444 Northeast 234th, Arcadia, Oklahoma, on May 25, 2021:

    a. 2022 Featherlite Coach RV, VIN: 2PCVS3496KC710378;

    b. 1998 Dodge Ram 2500, VIN: 3B7KF2660WM245434;

    c. 2021 Four Star Trailer, VIN: 4FKHG372KM0039028; and a

    d. 2020 Ford F450, VIN: 1FT8W40T9LEC83745.

N. The following personal property, all seized from 3561 West Providence in Fayetteville, Arkansas, on May 25, 2021:

    a. 2020 Can-AM model 007TLC00w Maverick X#, VIN: 3JBVXAV4XLK001577;

    b. 2020 Chevrolet Silverado, VIN: 1GCUYGED0LZ253284;

    c. Various pairs of footware manufactured by John Varvatos, Canali, Zegna, Berloti-Paris, Brunillo, Givenchy, and Yeezy;

    d. One $5,000 Aria Casino Chip; and

    e. $52,493.00 in U.S. Currency.

O. The following personal property, all seized from 200 East Central Avenue, Central City, Arkansas, on May 25, 2021:

    a. 2015 Rolls Royce Wraith, VIN: SCA665C56FUX85372;

    b. 2014 Porsche Panamera, VIN: WP0AF2A76EL083482;

    c. 2015 Toyota 4 Runner, VIN: JTEBU5JR9F5238248:

    d. 2020 Honda TRX420FA2L Rancher AT, VIN: 1HFTE4192L4600458;

    e. Akai Professional MPK258 Electronic Keyboard;

f.  Roli Seaboard Rise 49 Keyboard with padded case, serial number: R49111120905;

g.  Akai X-1800SD Vintage Reel to Reel tape player, serial number: C-6688;

h.  Avid 9100-65452-13 F Mixing Board with power cord, serial number: EAEEW85200007F;

i.  Yamaha CP300 Stage piano includes FC4A foot pedal and case, serial number: UAUN01030;

j.  Philco antique radio/record player with wooden cabinet, serial number: V82542;

k.  Crosley Model CR8005D-8K record player, serial number: 321050917;

l.  Sentinel Model 345 series A tube radio with red case; and

m.  Various speakers and amplifiers manufactured by Fender, JBL, Ampeg, Ventura, Gibson, Marshall, Tyler, and Yamaha.

P.  The following personal property, all seized from 201 Highway 255, Lavaca, Arkansas, on May 25, 2021:

a.  2019 Bombardier 35KA Wake 155, VIN: YDV45515A919;

b.  2019 Bombardier 35KA Wake 155, VIN: YDV41862K819;

c.  2020 Haul Rite Trailer VWC DBL-HD Trailer, VIN: 19BEF1419LCA20289;

d.  2020 Trailer Severe 14' Utility, VIN: 4S9BU1414LS128035;

e.  2012 Ford Van, VIN: NM0LS7AN7CT091388;

f.  Karavan Trailer, VIN: 5KTUS1413KF519784;

g.  2011 Polaris Ranger, VIN: 4XAWH50A1BB413732;

h.  Enclosed Trailer, VIN: 59NIE1211GB004077;

i.  2021 Highline Trailer;

j.  2021 Cadillac Escalade, VIN: 1GYS4GKL4MR297394;

k.  2015 Nissan Juke, VIN: JN8AF5MR3FT513022;

15

l.  Black and wood cabinet sound console with assorted analog boards, power supplies and equalizers;

m.  API Legacy Sound Console with computer screen and power supply;

n.  86 guitars of various models;

o.  Hohner International K1 Electronic Piano, serial number: 12075,117v;

p.  Hammond XK-2 Electronic Piano, serial number: 02053628;

q.  Nord Stage 3 Compact 73 Keyboard with case and power cord, serial number: 15507;

r.  Wurlitzer Electric Piano, Model 200 with foot pedal, serial number: 85207;

s.  Steinway baby grand piano Model TG-1500, CG 0000972;

t.  Steinway upright piano, serial number: 86543;

u.  Assorted percussion equipment to include bongos, mounted and un-mounted toms, bass drums, percussion, snare, subkick and shake drums manufactured by Meinl, Aquarian, Noble & Cooley, Mapex, Sonar, Orange County, Craviotto, Ludwig, Slingerland, Yamaha, and Remo;

v.  Assorted cymbals manufactured by Byzance, Carean, Paiste, Sadian, Wuhun, Zildjan, Paiste, Orian, and Crash;

w.  Various speakers manufactured by Barefoot, Focal Shape, Yamaha, Master MK2 Lead, Fender, Michael Dolsey Designs, Baxter Regal, Dr. Z, Bogner, Gibson, Ampeg, Marshall, and Bose and 35 amplifiers;

x.  Pair of ATC Studio Control Monitor Model SCM50PSL speakers, serial number: 3265/3266;

y.  One Remington .22 rifle, model 742 with scope, serial number: 7199850;

z.  One Winchester .22 rifle, model 9422MXTR, serial number: F579043;

aa.  Various pairs of footwear manufactured by Louis Vuitton, Yeezy, and Nike; and

bb.  One Louis Vuitton Handbag.

Q.  The following personal property, all seized from 608 Ridge Point, Fort Smith, Arkansas, on May 25, 2021:

    a. 2017 Cadillac Escalade, VIN: 1GYS4DKJ8HR389417;

    b. One Kimber Solo Carry pistol, serial number: S1149505;

    c. One Smith & Wesson revolver, serial number: CYR7040;

    d. One Walther PPK/S pistol, serial number: 016688;

    e. One lady's Rolex Watch; and

    f. Various pairs of footwear manufactured by Louis Vuitton and Nike, to include Air Jordans.

R. The following personal property, all seized from 8819 Rogers Avenue, Suite C, Fort Smith, Arkansas, on May 25, 2021:

    a. 2011 Mercedes-Benz GLK 350, VIN: WDCGG8HB3BF642818;

    b. $9,800 in U.S. Currency;

    c. 488 guitars of various models;

    d. Various speakers manufactured by Imperial, Fender, Ampro, and Morgan, as well as 87 amplifiers;

    e. Quilter MicroPro Mach2 Controller, serial number: 40021017151;

    f. Assorted percussion equipment to include three and four piece sets, foot pedals, cymbals, snares, bass, toms, and steel drums manufactured by Truth Drums, Des True, Pearl, Q-Drums, Noble & Cooley, JumbleJam, Donoho, and DW;

    g. Yamaha Genos electronic keyboard/piano with cord, serial number: UEZN0114;

    h. Yamaha MX88 Music Synthesizer electronic keyboard with stand, serial number: UVZY01204;

    i. Various paintings of Jimmy Hendrix, Steve Clark, Tom Petty, The Beatles, Elvis, and an Alien Drummer, as well as prints of Elvis, Willie Nelson, and guitars; and

    j. Various pairs of footwear manufactured by Ferragamo Salvatore, Gucci, and Nike, to include Air Jordans.

S. The following personal property, all seized from 5111 Rogers Avenue, Fort Smith,

Arkansas, on May 25, 2021:

    a. 1964 Chevy Impala, VIN: 21769K16060645;

    b. Separately framed jerseys that were signed by Troy Aikman, Wade Boggs, Shaqille O'Neal; and

    c. One signed Scarface movie poster.

## **PROCEEDS IN SEIZED ACCOUNTS**

T. $94,971.58 seized from Bank of OZK account ending in 1863;

U. $225.95 seized from IBC Bank account ending in 0124;

V. $9,046.19 seized from Banc First account ending in 4027;

W. $44,840.37 seized from Banc First account ending in 9512;

X. $22,843.23 seized from Banc First account ending in 7788;

Y. $72,008.59 seized from Valliance Bank account ending in 4208;

Z. $20,858.19 seized from Valliance Bank account ending in 7046;

AA. $101,754.95 seized from Valliance Bank account ending in 7970; and

BB. $44.29 seized from First Horizon Bank account ending in 3194.

## **REQUEST FOR FORFEITURE MONEY JUDGMENT**

In addition to the forfeiture of the above-described items of real and personal property, the United States also seeks the forfeiture of a money judgment of a sum of at least $12,501,359.87 against this Defendant, which amount is equal to the gross proceeds traceable to the commission of the violations alleged in this Indictment.

The basis for this requested money judgment is due to the gross proceeds of the charged offense having formerly been on deposit in the following accounts and in the listed amounts:

        (i) Approximately $725,000 in U.S. currency formerly on deposit in account number in 1863 at Bank OZK;

(ii) Approximately $310,500 in U.S. currency formerly on deposit in account number ending in 0124 held at IBC Bank;

(iii) Approximately $920,000 in U.S. currency formerly on deposit in account number ending in 3194 held at First Horizon Bank;

(iv) Approximately $4,238,910.74 in U.S. currency formerly on deposit in account number ending in 7502 held at Bank of Oklahoma;

(v) Approximately $1,500,000 in U.S. currency formerly on deposit in account number ending in 0157 held at Bank of Oklahoma;

(vi) Approximately $700,000 in U.S. currency formerly on deposit in account number ending in 2749 held at Bank of Oklahoma;

(vii)    Approximately $14,000 in U.S. currency formerly on deposit in account number ending in 6456 held at Bank of Oklahoma;

(viii)   Approximately $2,909,949.13 in U.S. currency formerly on deposit in account number ending in 4027 held at BancFirst;

(ix) Approximately $945,000 in U.S. currency formerly on deposit in account number ending in 9512 held at BancFirst; and

(x) Approximately $238,000 in U.S. currency formerly on deposit in account number ending in 7788 held at BancFirst.

If any of the property subject to forfeiture, as a result of any act or omission of the

defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A True Bill.

DAVID CLAY FOWLKES
ACTING UNITED STATES ATTORNEY

/s/ Grand Jury Foreperson___
Grand Jury Foreperson

By

Kenneth Elser
Assistant United States Attorney
Arkansas Bar No. 89184
414 Parker Avenue
Fort Smith, Arkansas 72901
Telephone: 479-783-5125
Email Kenny.Elser@usdoj.gov

JOSEPH S. BEEMSTERBOER,
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA, DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By

D. Keith Clouser
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice