UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                    No. 2:21-CR-20030-001

BILLY JOE TAYLOR                                                            DEFENDANT

## OPINION AND ORDER

Before the Court is Defendant Billy Joe Taylor's motion (Doc. 47) for revocation or amendment of the detention order (Doc. 46) granting petition for action on conditions of pretrial release issued by Chief United States Magistrate Judge Mark E. Ford.  The Government has not filed a response.  For the reasons set forth below, the motion will be denied, and the findings of the Magistrate will be affirmed.

I.      **Background**

On May 21, 2021, a criminal complaint was filed against Defendant charging him with one count of health care fraud in violation of 18 U.S.C. §§ 1347 and 2.  Defendant was arrested on this charge on May 26, 2021, and on that date, pursuant to 18 U.S.C. § 3142, was released on a $100,000 secured bond with conditions of release.  Defendant's conditions of release restricted Defendant's travel to the Western District of Arkansas without prior approval from the pretrial services office and prohibited Defendant from contacting, directly or indirectly, any person who is or may be a victim or witness in the investigation or prosecution.  (Doc. 13, p. 3).

On November 2, 2021, an indictment was returned against Defendant charging him with sixteen counts of healthcare fraud in violation of 18 U.S.C. §§ 1347 and 2 and one count of money laundering in violation of 18 U.S.C. § 1957.  The indictment alleged that while running laboratories for medical services which Defendant co-owned, Defendant made false and fraudulent claims to

Medicare for laboratory services which were neither ordered by the named medical provider nor performed for the named beneficiary, leading to damages in excess of $100 million.  (Doc. 25, pp. 6-7).  The indictment also alleged that Defendant committed money laundering by attempting to make a $20,742.75 purchase at a jeweler using funds derived from the alleged healthcare fraud. *Id.* at p. 10.

On November 17, 2021, Defendant's pretrial services officer filed a petition for action on conditions of pretrial release (Doc. 30).  The petition alleges Defendant violated three conditions of his release in that he: (1) committed a new violation of law; (2) traveled outside the Western District of Arkansas without prior approval; and (3) maintained contact with witnesses to the investigation.

Chief Magistrate Judge Ford held a bond revocation hearing on December 20, 2021.  At the hearing, evidence was presented regarding the three alleged violations.  The Government presented testimony that beginning in June 2021—after Defendant was released on bond—Defendant contracted with GenTech Scientific, LLC, a company which purchases and refurbishes used lab equipment, to sell equipment owned by Defendant's laboratories.  Defendant told GenTech he was closing his laboratories because of poor health and initially sold and delivered $50,000 worth of equipment to GenTech.  In a second transaction Defendant agreed to sell GenTech certain equipment for a sales price of $115,000.  GenTech paid this price and received the instruments, however, Defendant did not include the accompanying software.  Without the software the machines were inoperable.  The software itself had a total value of $75,000, which was reflected in the sales price.  To date, Defendant has never sent the software.  In a third transaction, Defendant agreed to sell equipment to GenTech for $170,000.  GenTech made an initial down payment of $85,000 and a later payment of $7,500 to expedite shipping.  However,

Defendant did not deliver any equipment to GenTech.   In a fourth transaction, Defendant represented he had more equipment to sell and offered GenTech priority in purchasing any future equipment Defendant was to sell.   GenTech wired Defendant $25,000 for the opportunity to purchase future available equipment.   To this date, Defendant has not sold additional equipment to GenTech, nor has Defendant offered a refund.

Several emails exchanged between Defendant and GenTech were introduced into evidence. In those emails Defendant consistently assured GenTech delivery of third transaction equipment and second transaction software was forthcoming.   Defendant claimed shipment of the equipment was delayed because the landlord of the facility the equipment is housed in refused to release the equipment until Defendant paid past due rent.   However, no evidence was introduced that Defendant attempted to use any of the $192,500 GenTech paid Defendant to pay the back rent and access the locked away equipment.   Instead, testimony demonstrated that Defendant took out $102,400 of this money in cash and used the remainder to pay employees of the laboratories, potential witnesses, and Defendant's attorneys.

Government witnesses testified at the hearing that Defendant also maintained nearly daily contact with potential witnesses, including Defendant's former employees Clayton Love, Miranda Plum, and Alissa Fisher.   Throughout the criminal investigation surrounding Defendant, Love was interviewed twice by law enforcement and law enforcement searched his residence for evidence. Plum was also interviewed by law enforcement during the investigation and a search warrant was executed at her residence where law enforcement seized evidence related to the investigation.   Law enforcement also seized Plum's vehicle which Defendant had purchased for her.   Fisher was also interviewed by law enforcement and the vehicle Defendant had purchased for her was seized.

After Defendant was released on bond, Defendant and Love conversed almost daily, either

3

in person or via text message.  Testimony and evidence at the hearing demonstrated Defendant was involved in Love hiring an attorney and at one point Defendant even discouraged Love from hiring a new attorney.  Further, after an interview with law enforcement, the Defendant told Love—via text message—that the interview was a "scare tactic" by investigators and investigators lied to Love by telling him he was a target of the investigation.  In a different text exchange Defendant arranged for Love to purchase a vehicle for Plum after law enforcement seized Plum's vehicle.  Defendant promised to pay Love up to $16,000 for the vehicle and further promised to continue paying Love's salary and a previous debt Defendant owed to Love.  A vehicle was purchased on June 21, 2021, in Love's girlfriend's name.  Love then gave Plum possession of the vehicle.  Partial vehicle payments were made using Alissa Fisher's PayPal account, and Defendant also provided Love with $2,500 in cash.  Fisher's bank account was also used to facilitate wire transfers from GenTech to Defendant.

Finally, evidence was presented that Defendant made several unauthorized trips outside of the Western District of Arkansas since being released on bond.  Defendant stayed overnight at the River Spirit Casino in Tulsa, Oklahoma 23 times from June 15, 2021, to October 14, 2021.  Many of these stays spanned multiple nights.  The pretrial services office granted Defendant  prior approval to leave the Western District of Arkansas to attend several doctors' appointments in Oklahoma City, Oklahoma.  However, no convincing rationale was presented for why Defendant would stay in Tulsa in connection with his appointments approximately 100 miles away in Oklahoma City.  Though travel to Tulsa was authorized on four separate occasions, Defendant was not authorized to stay at a casino, and indeed on one occasion when Defendant was permitted to go to Tulsa for a one-day medical appointment Defendant stayed at the casino for four nights.  Text messages exchanged between Defendant and Love also revealed that on at least one occasion

Defendant traveled to Branson, Missouri without prior approval.

In support of Defendant's argument that detention was unwarranted, Defendant submitted two letters from physicians recommending against detention to the Magistrate. The first letter from Defendant's psychiatrist, whom Defendant began seeing after his arrest, stated that because of Defendant's mental health conditions and the medication Defendant takes to treat these conditions, Defendant's psychiatric stability may suffer if he is incarcerated. The second letter was by Defendant's advanced practice nurse and detailed Defendant's blood disorder and complications associated with a prior COVID-19 infection. The second letter also explains that incarceration would be detrimental to Defendant's health. Defendant called no witnesses to testify about the contents of the letters or Defendant's health conditions. Indeed, Defendant's counsel presented no argument on Defendant's health conditions beyond introducing the letters into evidence and stating detention would be detrimental to Defendant's health. The Government was not afforded an opportunity to cross examine the medical professionals who authored the letters on Defendant's health conditions.

Defendant's pending motion requests the Court to revoke or amend the Magistrate's detention order pursuant to 18 U.S.C. § 3145(b). Defendant does not dispute the Magistrate's findings that he violated conditions of his pretrial release, but instead argues the Magistrate failed to consider Defendant's serious medical conditions. Defendant argues that pretrial release is appropriate, either with the same conditions or more restrictive conditions.

## II.     Legal Standard

"A person who is ordered detained by a magistrate judge . . . may file . . . a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Such an order is entitled to de novo review. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985).

Under 18 U.S.C. § 3148, "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."  Detention shall be ordered if the judicial officer finds there is "(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release."  *Id.*  In addition, the judicial officer must find that based on a consideration of the factors listed in 18 U.S.C § 3142(g) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community;" or "the person is unlikely to abide by any condition or combination of conditions of release."  *Id.*  Additionally,

> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."

*Id.*

## III.   Discussion

### A.  New Violation of Law

Based on the evidence presented before the Magistrate, the Court finds there is probable cause to believe Defendant committed the crime of wire fraud in violation of 18 U.S.C § 1343 when Defendant used to internet to purportedly sell equipment to GenTech which was never delivered.  The elements of wire fraud are "(1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme."  *United States v. Rice*, 699 F.3d 1043, 1047 (8th Cir. 2012) (citing *United States v. Frank*, 354 F.3d 910, 918 (8th Cir. 2004)).  The probable cause standard only requires facts sufficient to justify the belief by a prudent person that the crime has been committed.  *See, e.g.*, *Royster v. Nichols*, 698 F.3d 681, 688 (8th

6

Cir. 2012).

Defendant does not dispute that he contracted to sell equipment to GenTech and payment was made through wire transfers. Defendant also does not dispute that $192,500 worth of products were never delivered, and no refund was issued. Defendant's argument that he had no intent to defraud and shipment was delayed because of back rent owed is unpersuasive when the evidence establishes that no part of the $192,500 was used to pay rent and secure access to and shipment of the equipment. Even after GenTech made a payment of $7,500 specifically to facilitate shipment, this money was apparently not used to facilitate shipment. In light of these facts, there is probable cause to believe Defendant committed the crime of wire fraud and thereby violated the conditions of his bond. Because the crime of wire fraud is a felony, a rebuttable presumption arises that "no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148. Defendant has not presented any relevant evidence to rebut this presumption.

### B. Unauthorized Contact with Potential Witnesses

The evidence also demonstrates that after Defendant was released on bond he continued to contact potential witnesses Love, Plum, and Fisher. Defendant argued before the Magistrate that because he had not been provided with a witness list from the Government he was unaware that Love, Plum, and Fisher were potential witnesses, however, this argument is unpersuasive. Defendant knew law enforcement had searched Love and Plum's residences and conducted interviews with Love, Plum, and Fisher. Text messages exchanged between Defendant and Love reference conversations Love had with law enforcement, when Defendant assured Love he was not a target of the investigation and when Love was informed otherwise that was a bad-faith scare tactic. Defendant also discussed with Love his choice of counsel retained in relation to the

7

investigation.  The evidence demonstrates Defendant was aware Love, Plum, and Fisher were involved in the investigation and the absence of a potential witnesses list is not a compelling argument.

Most egregiously, the evidence shows that Defendant worked with Fisher and Love to purchase a vehicle for Plum after law enforcement seized Plum's vehicle in the course of the investigation.  The Court agrees with the Magistrate that this conduct may constitute the improper influence or tampering with a known witness.

From the evidence before the Court it is clear Defendant was aware Love, Fisher, and Plum were potential witnesses, and yet he maintained contact with them anyway.  The Court therefore finds by clear and convincing evidence that Defendant violated the condition of his bond prohibiting him from contacting potential witnesses.

## C.  Unauthorized Travel Outside of the Western District of Arkansas

Defendant does not dispute that he traveled outside of the Western District of Arkansas and stayed at the River Spirit Casino in Tulsa, Oklahoma 23 times since he was released on bond. Defendant's pretrial services officer testified that these visits were never authorized, and though Defendant was permitted to travel to Oklahoma City, Oklahoma for medical appointments on those few occasions when proper notice and approval were provided, this authorization does not extend to 23 stays at a casino in an entirely different city roughly 100 miles away from his destination. Defendant also does not dispute that on at least one occasion he traveled to Branson, Missouri without prior approval from his pretrial services officer.  The evidence is overwhelming that Defendant flagrantly violated the condition of his bond restricting his travel to the Western District of Arkansas.

### D. Defendant's Medical Conditions

Defendant does not dispute the Magistrate's findings that Defendant violated the conditions of his bond.  Instead, Defendant's only contention is that the Magistrate failed to consider the letters from Defendant's physicians.  Defendant argues these letters demonstrate incarceration would be severely detrimental to Defendant's overall health and because of his health conditions he should be allowed to remain on pretrial release on more restrictive conditions.

Although the Magistrate's order does not make specific reference to the letters, the record clearly indicates the letters were introduced into evidence.  However, no witnesses were called to testify or be subject to cross examination regarding the contents of the letters or Defendant's health conditions.  The lack of an opportunity for cross examination and defense counsel's bare bones argument at the hearing do not weigh in favor of release.

The Court has reviewed the letters themselves but does not find them persuasive.  The Court does not make light of Defendant's health conditions.  However, Defendant was also aware of the severity of his health conditions when he committed multiple flagrant violations of the conditions of his pretrial release.  Defendant may not use his health conditions as a shield to protect him from the consequences of intentional and repeated violations of the conditions of his pretrial release.

The Court agrees with the Magistrate's findings that in light of Defendant's flagrant disregard for the conditions of his pretrial release—as evidenced by his repeated violations—he is unlikely to abide by any condition or combination of conditions of release.  In addition, in light of Defendant's financial resources and repeated unauthorized travel outside of the Western District of Arkansas, the Court also finds Defendant poses a risk of flight.  Further, there is probable cause to believe that while on bond Defendant committed wire fraud against GenTech for $192,500.

Though Defendant likely does not pose any physical danger to anyone in the community, Defendant poses a risk of continued financial harm to others if he is permitted to remain on bond, and no evidence has been presented to the Court to rebut the presumption that "no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."  18 U.S.C. § 3148.  The Court finds that Defendant is unlikely to abide by any condition or combination of conditions the Court may impose to prevent further harm to the community and the investigation surrounding Defendant, and therefore detention is warranted.

## IV.   Conclusion

IT IS THEREOFRE ORDERED that the motion (Doc. 47) for revocation or amendment of the detention order is DENIED.  The Defendant will remain detained and in the custody of the United States Marshal Service.

IT IS SO ORDERED this 28th day of January, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE