UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                       No. 2:21-CR-20030-001

BILLY JOE TAYLOR                                                                              DEFENDANT

## OPINION AND ORDER

On November 2, 2021, Defendant Billy Joe Taylor was charged by indictment with sixteen counts of health care fraud in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2, and one count of money laundering in violation of 18 U.S.C. § 1957. *See* Doc. 1. The indictment also includes a forfeiture allegation. *Id.* at ¶ 32 *et seq.* Although Mr. Taylor was initially released on a $100,000 secured bond, *see* Doc. 12, his bond was revoked in December 2021 because he committed multiple violations of his conditions of pretrial release, *see* Docs. 46, 57. Since then, Mr. Taylor has been in the custody of the United States Marshal Service. He is currently housed in the Washington County Detention Center.

Mr. Taylor has hired and fired numerous lawyers in this matter. Most recently, on July 26, 2022, this Court granted Mr. Taylor's motion to represent himself. *See* Doc. 78. He is still proceeding *pro se* today.

Over the last month and a half, Mr. Taylor has filed six motions which have been fully briefed and are now ripe for decision. Those motions, and the various briefs filed in support or opposition, are:

- Mr. Taylor's motion to preserve objections (Doc. 81), to which no response was filed;

- Mr. Taylor's motion for release to defend case and care for health (Doc. 76), various letters of support that Mr. Taylor has submitted as an exhibit to this motion (Doc. 76-1), the

1

Government's response in opposition (Doc. 84), and a filing by Mr. Taylor that he has styled a "supplement" in support (Doc. 88);

- Mr. Taylor's motion for production (Doc. 74), the Government's response in opposition (Doc. 82), and a filing by Mr. Taylor that he has styled an "answer" in support (Doc. 87);

- Mr. Taylor's first motion to compel (Doc. 75) and the Government's response in opposition (Doc. 83);

- Mr. Taylor's second motion to compel (Doc. 80), the Government's response in opposition (Doc. 89), and a filing by Mr. Taylor that he has styled an "answer" in support (Doc. 90); and

- Mr. Taylor's motion to set hearing (Doc. 91) on all of the foregoing motions.

The Court has considered the foregoing materials. For the reasons given below, all six of these motions will be DENIED. The motions will be discussed below in the same sequence as they are listed above.

*First*, Mr. Taylor's motion to preserve objections does not appear to request any court ruling. Instead, he simply rehashes a laundry list of arguments he has previously made regarding various other prior motions and hearings, as well as previous disagreements between himself and various attorneys who have represented him throughout this case. The purpose he gives for making this filing is "to preserve his prior objections," *see* Doc. 81, p. 2, and to "clearly state these objections by the defendant for the record," *see id.* at 5. The Court is unable to discern what relief, if any, Mr. Taylor is requesting through this motion; therefore, the motion is denied.

*Second*, regarding Mr. Taylor's motion for release: a judicial officer is authorized to re-open a detention hearing

> at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing

2

>on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).  However, Mr. Taylor's motion does not point to any information that was unknown to him when his bond was originally revoked, other than that he is now proceeding *pro se*.[1]  The fact that Mr. Taylor has chosen to represent himself has no bearing on this Court's previous findings that he is a flight risk, poses a danger to the community, and is unlikely to abide by any condition or combination of conditions of release.  *See* Docs. 46, 57.  To whatever extent Mr. Taylor's detention makes it difficult for him to prepare his defense, the Court would note that Mr. Taylor's decision to violate the conditions of his release was his own, as was his decision to represent himself.  If a defendant could obtain his release merely by firing his attorney and proceeding *pro se* then his conditions of release would effectively be a dead letter, and the Court would have no way of assuring his appearance or the safety of the community.  The Court has no obligation to permit such manipulation of these proceedings.  *See, e.g.*, *United States v. Allen*, 2019 WL 2151304, at *4 (D. Colo. May 17, 2019).

*Third*, regarding Mr. Taylor's motion for production: Mr. Taylor asks the Court to order the Government to produce "[c]ell phone text messages and relevant data stored from any employee of the defendant," "[c]omputer, [l]aptop [sic] in the possession of the government . . . whereby billing employees utilized these devices in the course of the employees['] job as an employee," and "call logs" providing data about communications "between the employees in and amongst themselves and with the defendant." *See* Doc. 74, p. 2.  Mr. Taylor also seeks production

---

[1] Mr. Taylor's "supplement" in support of his motion for release refers cryptically to the existence of information that was previously unknown to him that he "obtained through discovery," describing this information as "new issues" that "hurt the position the government took at the detention hearing." *See* Doc. 88, p. 2.  However, Mr. Taylor never explains what this information actually is, much less what its relevance is.

3

of FBI agent Matt Ferguson's grand jury testimony, production of unspecified communications and statements by "Gentech Scientific, Mike Lippa, Clayton Love, and . . . Riverspirit Casino," and production of "communication from Blue Cross Blue Shield Companies to the government and agents." *See id.* at 3.

For the most part, these requests are procedurally redundant. Counsel for Mr. Taylor already requested discovery in open court during Mr. Taylor's arraignment, thereby triggering the Government's discovery obligations under Federal Rule of Criminal Procedure 16(a), and at that time the Government was further "ordered to provide all exculpatory evidence to Defendant pursuant to *Brady v. Maryland*."[2] *See* Doc. 35. Mr. Taylor's motion does not claim, nor does it present any cause to believe, that the Government has withheld any discoverable employee records from him. And the Court will not simply order the Government to produce *all* communications with or by Gentech, Lippa, Love, Riverspirit, or Blue Cross that happen to be in its possession, as Mr. Taylor obviously is not entitled to materials that are privileged or irrelevant to his case. But Mr. Taylor's motion does not describe what communications, if any, with these entities or individuals are being withheld from him that are exculpatory or material to his defense. The Court will not enter an order generically stating that the Government is required to comply with its discovery obligations absent some showing that the Government has failed to do so.

As for Agent Ferguson's grand jury testimony: under the Jencks Act, Mr. Taylor is not entitled to these statements until Agent Ferguson "has testified on direct examination in the trial of the case." *See* 18 U.S.C. § 3500(a). The trial of this case has not yet occurred; therefore, Mr. Taylor is not yet entitled to Agent Ferguson's grand jury testimony. However, Mr. Taylor contends that he is entitled to this material because Agent Ferguson provided direct testimony at his

---

[2] 373 U.S. 83 (1963).

detention hearing in December 2021. But Agent Ferguson's testimony at that hearing pertained to Mr. Taylor's violations of his release conditions, not to the facts which will be the subject of the trial in this matter. *See generally* Doc. 52, pp. 5–47. The Jencks Act only requires the Government to provide prior statements by a witness which "relate to the subject matter to which he testified." *United States v. Jewell*, 614 F.3d 911, 925 (8th Cir. 2010) (internal alteration and quotation marks omitted). Therefore, Mr. Taylor's motion for production will be denied.

*Fourth*, Mr. Taylor's first motion to compel asks this Court to modify a Western District of Arkansas grand jury subpoena that was recently served on Highmark West Virginia Inc. That subpoena commands Highmark to produce to the grand jury "[a]ll exhibits submitted in support of Highmark West Virginia Inc.'s Motion for Summary Judgment" as well as "[t]ranscripts of any and all evidentiary hearings with evidentiary exhibits" in the case of *Highmark West Virginia Inc. v. Medtest Labs. LLC et al.*, 18-C-271 in the Circuit Court of Wood County West Virginia, Business Court Division. *See* Doc. 75, p. 7. Mr. Taylor believes this subpoena is inappropriately narrow and designed to obtain only evidence that is favorable to the prosecution, and he asks that this Court expand the scope of the subpoena to include "all discovery" from the West Virginia case, "all depositions" from the West Virginia case, and "all undisclosed prior evidence between Highmark West Virginia Inc. and any of its Blue affiliates." *See id.* at 3. Mr. Taylor does not cite any law in support of this request, and the Court is likewise unaware of any.

As an initial matter, it is unclear to the Court how Mr. Taylor would even have standing to make this request, given that the subpoena is not directed at him. For example, he cannot (and does not) argue that this Court has authority to modify the subpoena under Federal Rule of Criminal Procedure 17(c)(2), since that would require him to show that "compliance would be unreasonable or oppressive." In general, grand juries have extremely wide latitude in the issuance

of subpoenas. "A grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991) (internal quotation marks omitted). "[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the *recipient* who seeks to *avoid compliance*." *Id.* at 301 (emphasis added). But even assuming for the sake of argument that Mr. Taylor has standing to seek modification of this subpoena, "[i]t is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991). The bottom line is that Mr. Taylor is not entitled to direct grand jury proceedings, so his motion will be denied.

*Fifth*, we come to Mr. Taylor's second motion to compel. In this motion, Mr. Taylor asks the Court to enter an order compelling the Washington County Detention Center, where he is currently housed, to provide him with:

- 8 hours per day of access to a private room with a computer, printer, copy machine, and unmonitored phone lines;
- a place to house "a storage unit full of files and computer printouts containing items the defense will use at trial" that are currently located in Atlanta, Georgia, "in the possession of prior attorney Joshua Lowther;" and
- an office chair and desk.

*See* Doc. 80, p. 3. Mr. Taylor contends that these provisions are necessary to allow him to prepare an adequate defense in this case.

The motion does not describe what Mr. Taylor *is* being provided at the Detention Center, much less explain how his current provisions are inadequate. In his "answer" to the Government's response, Mr. Taylor concedes that he has been provided with a computer on which to store the voluminous discovery in this case. *See* Doc. 90, p. 3. Presumably, then, he has been given some amount of access to some room where this computer and possibly other materials may be stored. The Court cannot discern from Mr. Taylor's motion whether he is saying that he lacks meaningful access to the computer or whether he would simply prefer a fancier chair and desk than he currently has; obviously these two scenarios present very different concerns. The Court would imagine that this room also contains some sort of table on which the computer rests and some sort of seating apparatus for the person who is using the computer. However, the Court is not presently in a position to make any findings as to whether that is the case, because Mr. Taylor has not provided the Court any information on which to base such a finding.

As for the requested printer, copier, unmonitored phone lines, and storage facility for the documents currently in the possession of his former attorney in Atlanta: the Eighth Circuit has repeatedly expressed "serious doubts whether a pretrial detainee who exercises his constitutional right to represent himself at trial thereby becomes entitled to legal resources over and above what are provided to the general inmate population." *See United States v. Beale*, 574 F.3d 512, 520 (8th Cir. 2009) (quoting *United States v. Kind*, 194 F.3d 900, 905 (8th Cir. 1999)). As the Court emphasized earlier in this Opinion and Order, Mr. Taylor's decisions to violate his conditions of release and then to proceed *pro se* were ultimately his own. In *Beale*, the defendant was charged with running a multi-million dollar tax fraud scheme. *See id.* at 514–17. Mr. Beale was detained pending trial, and he elected to represent himself notwithstanding the extraordinary complexity of that case. *See id.* at 520. Mr. Beale, like Mr. Taylor, "was warned about the handicaps faced by

pro se defendants who must mount their defense within the confines of the jailhouse setting." *Id.* The Eighth Circuit observed that Mr. Beale "was given access to a computer, telephone, visitors, and the services of stand-by counsel," and held that this was adequate to satisfy due process. *See id.* Nothing in Mr. Taylor's motion gives this Court any reason to believe that his present circumstances differ meaningfully from those of Mr. Beale. Therefore, Mr. Taylor's second motion to compel will be denied.

*Finally*, Mr. Taylor's motion to set hearing will be denied. Oral argument is not necessary to resolve the issues discussed above. The Court is adequately apprised of the governing law, and the motion does not state that there is any need to call witnesses.

IT IS THEREFORE ORDERED that Mr. Taylor's motions to preserve objections (Doc. 81), for release to defend case and care for health (Doc. 76), for production (Doc. 74), to compel (Docs. 75 and 80), and to set hearing (Doc. 91) are all DENIED.

IT IS SO ORDERED on this 2nd day of September, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE